**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAGDALY CRUZ,<br><br>                   Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                   Defendant. | Civil Action No. 14-6493 (JLL)<br><br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Magdaly Cruz ("Plaintiff") from the final determination by Administrative Law Judge ("ALJ") Hon. Joel Friedman upholding the final decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties, for the following reasons, the final decision of the Commissioner is **affirmed**.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act on December 29, 2010. (R. at 510-12.) The application was denied on June 30, 2011. (R. at 447-49.) Plaintiff's request for reconsideration was denied on February 1, 2012. (R. at 452-54.) Plaintiff filed a request for a hearing on March 21, 2012. (R. at 20.) A hearing was held before ALJ Joel Friedman on March 5, 2013 in Newark, NJ. (R. at 35-71.) On May 22, 2013,

ALJ Friedman issued a decision finding that Plaintiff was not disabled during the relevant time period. (R. at 19-29.) Plaintiff requested review of the ALJ's decision by the Appeals Council on June 4, 2013. (R. at 12-13.) On August 21, 2014, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner. (R. at 1-7.) Plaintiff then commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and/or 1383(c). (Compl. at 1.)

      B.    <u>Factual History</u>

          1. <u>Plaintiff's Testimony</u>

Plaintiff gave testimony before ALJ Friedman on March 5, 2013 in Newark, NJ. (R. at 35-71.) During this hearing, Plaintiff asserting disability stemming from arthritis, back pain, migraines, cholesterol, sinuous, and psychological impairments such as depression. (R. at 39, 41.) The onset date of the alleged disability is July 1, 2008. (R. at 41.) Plaintiff stated that she has problems with pain that limit her ability to drive. (R. at 42.) Plaintiff was asked why she could not work and responded she is in pain and could not sleep. (R. at 44.) Plaintiff alleged that she gets tired, has pain in her bones, her hands, and her left side. (R. at 44.) She claimed she can only walk one block before getting tired. (R. at 57.) Plaintiff believes these impairments developed and worsened from injuries suffered in a 1990 motor vehicle accident. (R. at 44.)

Plaintiff takes daily medication consisting of three to four Percocet pills, Endocet and Butalbital for migraines, Zolpidem, and Ambien.  (R. at 48-49.) Plaintiff states that she can only stand less than 6 hours, for as long as the Percocet lasts, and that she can sit for maybe an hour. (R. at 58.) Plaintiff uses a cane but that can was "not exactly" prescribed. (R. at 57.) Plaintiff also stated that she has eyesight problems and hearing impairment on her left side. (R. at 59-60.) Plaintiff stated that she needs glass but has no insurance. (R. at 59.) Plaintiff claims that the

"doctor did not say" how bad her hearing is, and that as a child she had tubes put in because of ear infections. (R. at 60.)

Plaintiff testified regarding problems with her left arm and hand. (R. at 57.) Plaintiff stated that she cannot lift more than 3-5 pounds with that arm. (R. at 57.) Plaintiff further testified about chronic pain in the hips, legs, feet, and toes, which causes Plaintiff difficulty in completing daily activities such as dressing. (R. at 44.) Despite this assertion, Plaintiff testified that she is able to drive her daughter to school, which takes seven minutes, to shower alone, to wash her eight pound Chihuahua in the shower, to cook once or twice a week, to go to the super market and park with her daughter. (R. at 61-64.) Plaintiff stated that her daughter cleans their cat's litter box and that no one cleans the house. (R. at 63.)

Plaintiff also testified about her last two job positions. (R. at 50-51.) Plaintiff worked as a packer for a construction company where she had to walk and lift a maximum of 80 pounds. (R. at 50.) Plaintiff stated she left that job because the warehouse was cold and she felt pain in her bones. (R. at 50-51.) Plaintiff also testified that she worked for Qualipak, which required her to pack tops for perfume bottles while sitting and standing. (R. at 54.) In this occupation, Plaintiff was not required to lift over 10 pounds. (R. at 54.) However, Plaintiff stated that she could not do that job now because the machines moved to quickly for her allegedly disabled left hand. (R. at 54.) Plaintiff is right handed. (R. at 54.)

2. Medical Evidence

Dr. Sidali generally treated Plaintiff from August 2007 through April 2013 for a variety of complaints including low back pain, a sore throat, cough, migraines, acute sinusitis, allergies, chronic left knee pain, shoulder pain, and hearing impairment. (R. at 24.) On May 6, 2010, an MRI of Plaintiff's left knee revealed a degenerated menisci with associated tear in the entire

3

medial meniscus. (R. at 607.) A June 6, 2010 MRI showed a slightly located fluid collection on Plaintiff's right knee. (R. at 606.)

On July 14, 2010, Plaintiff saw Dr. Grey of Primer Orthopedics and Sports Medicine, P.C. for complaints of left knee pain. (R. at 600.) Dr. Grey noted that Plaintiff was in an accident in 1990 that led to two surgeries on her left knee in 1993 and 1995. (R. at 24.) Dr. Grey conducted a physical examination and observed left knee tenderness in the medial joint line, mild tenderness over the lateral joint line, and pain with McMurray. (R. at 600.) Physical therapy was recommended for one month. (R. at 600.) A follow up on September 22, 2010 revealed that physical therapy did not improve Plaintiff's condition. (R. at 24.) Plaintiff received a brain MRI on December 17, 2010, which was cleared as normal. (R. at 835.)

On January 13, 2011, Plaintiff was evaluated at the UMDNJ clinic for her complaints of left knee pain. (R. at 300.) Plaintiff relayed her history of left knee pain since an accident in 1990 and two arthroscopic surgeries on the left knee in 1993 and 1995. (R. at 300.) It was also noted that Plaintiff participated in unsuccessful physical therapy of her left knee in 2010. (R. at 300.) Plaintiff stated that she did not have any injections in her knee and that she tried Motrin, Flexeri, and Tramadol to temporarily relieve her symptoms. (R. at 300.) During the examination, Plaintiff appeared uncomfortable sitting in a chair. (R. at 24-25.) Plaintiff demonstrated full range of motion in the bilateral knees, but had pain at the end range and extension of the left knee. (R. at 301.) Even though Plaintiff showed tenderness to palpation in the left knee, her strength was 5/5 in both knees and there was no indication of sensory deficit. (R. at 301.)

Dr. Sidali completed a medical source statement on January 18, 2011 that limited Plaintiff to carrying and lifting five pounds, standing and walking for less than two hours, no limitation on sitting during an eight-hour work day, a limitation of pushing and pulling five

pounds, and a hearing impairment. (R. 372, 623.) Plaintiff was diagnosed with left knee pain and a history of meniscal repair to the knee. (R. at 25.) Plaintiff underwent an MRI on January 23, 2001 that revealed an extensive degenerative tear in the lateral meniscus, a degenerative anterior horn medial meniscus tear, and patellar chondromalacia. (R. at 266.) Plaintiff was given conservative treatment of oral analgesics. (R. at 25.)

On June 23. 2011, Dr. Fernando conducted an orthopedic consultative examination on Plaintiff per request by the SSA. (R. at 652.) Dr. Fernando reported that Plaintiff complained of a tear in the left lateral meniscus, arthritis in the left knee, back pain, and migraines. (R. at 652.) During the examination, Plaintiff was not in acute distress, walked with a normal unassisted gait at a reasonable pace, squatted fully, and walked on her heels and toes without problem. (R. at 653.) Aside from her left knee, Plaintiff had a full range of motion. (R. at 653.) Plaintiff did not demonstrate muscle atrophy or sensory or motor deficits in the bilateral upper and lower extremities. (R. at 653.) X-rays of the lumbar spine, left knee, and left should showed no evidence of fracture, dislocation, or abnormality in the discs. (R. at 653-54.) Dr. Fernando did observe limitation in the range of motion and tenderness in the joint line of the left knee. (R. at 653-54.) Dr. Fernando opined that weight bearing, walking, and anything done of a physical nature while standing would be painful because of the left knee tenderness. (R. at 653-54.)

On June 30, 2011 medical consultants from the state agency examined Plaintiff and determined that her capable of light work, including her past occupation as a packer. Light work was defined as lifting and carrying twenty pounds occasionally, ten pounds frequently, standing, walking, and sitting about six hours daily, and unlimited pushing and pulling. (R. at 662.) It was also determined that Plaintiff could never climb ladders, ropes, or scaffolds, occasionally climb

ramps or stairs, stoop, kneel, crouch or crawl, and frequently balance. (R. at 663.) Plaintiff was

also advised to avoid concentrated exposure to hazards. (R. at 665.)

## II.    STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported

by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262

(3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be less than a

preponderance." *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

It "does not mean a large or considerable amount of evidence, but rather such relevant evidence

as a reasonable person might accept as adequate to support a conclusion." *Pierce v. Underwood*,

487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered substantial. For

instance,

> [a] single piece of evidence will not satisfy the substantiality test if
> the [Commissioner] ignores, or fails to resolve, a conflict created
> by countervailing evidence. Nor is evidence substantial if it is
> overwhelmed by other evidence – particularly certain types of
> evidence (e.g. that offered by treating physicians) – or if it really
> constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v.

Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to

support his ultimate conclusions. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290

(3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." *Jones v.

Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). It does not matter if this Court "acting *de novo*

might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V.

Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (citing *Hunter Douglas, Inc. v. Nat'l Labor

Relations Bd.*, 804 F.2d 808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to

weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984)). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" *Id.* (citing *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)).

A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was discredited or rejected, the Court cannot determine whether the evidence was discredited or simply ignored. *See Burnett v. Comm'r of Soc. Sec*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

## III.   APPLICABLE LAW

### A.   The Five-Step Process for Evaluating Whether a Claimant Has a Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not

7

only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. 20 C.F.R. § 416.920. The claimant bears the burden of establishing the first two requirements. The claimant must establish that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with "a severe medically determinable physical or mental impairment." 20 C.F.R. §404.1520(a)-(c). If a claimant fails to demonstrate either of these two requirements, DIBs are denied and the inquiry ends. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1. If the claimant demonstrates that his impairment meets or equals one of the listed impairments, he is presumed to be disabled and therefore, automatically entitled to DIBs. *Id.* If he cannot make the required demonstration, further examination is required.

The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment. 20 C.F.R. §416.920(e). If a claimant is able to return to his previous employment, he is not disabled within the meaning of the Act and is not entitled to DIBs. *Id.* If the claimant is unable to return to his previous employment, the analysis proceeds to step five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 416.920(g). If the Commissioner cannot satisfy this burden, the claimant is entitled to DIBs. *Yuckert,* 482 U.S. at 146 n.5.

B.    The Requirement of Objective Evidence

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [Commissioner] may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." *Id.* Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record: "The adjudicator must evaluate the intensity, persistence, and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities." SSR 96-7p, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. *Id.* The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b). *See also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

The list of "acceptable medical sources to establish whether [a claimant] has a medically determinable impairment" includes licensed physicians, but does not include nurses. 20 C.F.R. §

9

404.1513(a). Though the ALJ "may also use evidence from other sources to show the severity of [a claimant's] impairments," this evidence is "entitled to consideration as additional evidence" and does not need to be given the same weight as evidence from acceptable medical sources. 20 C.F.R § 404.1513(d)(1). *Hatton v. Comm'r of Soc. Sec.,* 131 Fed. Appx. 877, 878 (3d Cir. 2005). Factors to consider in determining how to weigh evidence from medical sources include (1) the examining relationship, (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

## IV. DISCUSSION

Plaintiff argues that the ALJ erred in three regards. First, Plaintiff claims that the ALJ did not conduct a full residual functional capacity assessment because the ALJ failed to consider and explain his reasons for discounting all of the evidence. (Pl.'s Br. 25.) Plaintiff also asserts that the ALJ should not have found Plaintiff capable of sedentary work because the record does not contain substantial evidence to support that conclusion. (Pl.'s Br. 27.) Lastly, Plaintiff argues that the ALJ did not fully develop the record with regard to Plaintiff's ability to adjust to other work. (Pl.'s Br. 30.)

## A. There is Substantial Evidence in the Record to Uphold the ALJ's Residual Functional Capacity Assessment.

Plaintiff claims that the ALJ failed to consider and explain his reasons for discounting all of the evidence regarding Plaintiff's anxiety, insomnia, and depression when making his residual functional capacity ("RFC") determination. (Pl.'s Br. 25-26.) The Court finds that there is substantial evidence in the record to demonstrate that the ALJ properly assessed Plaintiff's RFC.

A claimant bears the burden of proving a disability. 42 U.S.C.S. § 423(d)(5). A diagnosis of an impairment, by itself, does not prove a disability. Phillips v. Barnhart, 91 Fed. Appx. 775 (3d 2004). A plaintiff must demonstrate disabling limitations to be entitled to benefits under the Social Security Act. *Id.*; *see also Jones v. Astrue*, 2011 U.S. Dis. LEXIS 68001, at *33-35 (finding that an assertion of depression with no explanation of the diagnosis, no description of the severity of the depression, and no description of impact on ability to perform basic work does not satisfy the claimant's burden of proving that her condition is disabling). When determining the RFC of a claimant, the ALJ has a duty to consider all evidence before him. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d 1999). Thus, a conclusion will be supported by substantial evidence when it considers obviously probative evidence. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d 1979).

The allegations of depression, anxiety, and insomnia were not obviously probative evidence bearing on the residual functional capacity determination because Plaintiff did not meet her burden of demonstrating that these conditions were disabling. First, Plaintiff did not list any mental health impairments as contributory conditions to her alleged disability. (R. at 527.) The only mentions of mental impairments in the record are diagnoses without explanation of severity or the way that these diagnoses impacts Plaintiff's functionality. Plaintiff never put forth these diagnoses as disabling and cannot now do so on appeal. Furthermore, the ALJ gave a thorough overview of all obviously probative evidence within the record. (R. at 23-25.) Therefore, because the record is lacking in any evidence that demonstrates Plaintiff's depression, anxiety, or insomnia as a disabling impairment and because the ALJ thoroughly considered all obviously probative evidence, the residual functional capacity determination of the ALJ is supported by substantial evidence.

B.  <u>There is Substantial Evidence in the Record to Uphold the ALJ's Conclusion that Plaintiff is
Capable of Sedentary Work.</u>

Plaintiff argues that the ALJ did not have substantial evidence to conclude that Plaintiff

was capable of sedentary work because such a conclusion is contrary to objective medical

evidence in the record. This Court is not convinced by Plaintiff arguments and finds that there is

ample evidence in the record to support the ALJ's decision.

While Plaintiff does have a myriad of health issues dating as far back as 2007, these

medical impairments have been deemed non-disabling by at least three doctors. On January 18,

2011, Dr. Sidali gave a recommendation that Plaintiff be limited to work that is analogous to the

sedentary work limitation determined by the ALJ. (R. at 372, 373, 623, 624.) Dr. Sidali is

Plaintiff's treating physician since at least September 2005. (R. at 372, 623.) Dr. Sidali

recommended that Plaintiff be limited to standing and walking for less than two hours, pushing

and pulling limited to five pounds, and no limitations of sitting during an eight hour work day.

(R. at 373, 624.) Similar to the ALJ conclusion, Dr. Sidali did not find Plaintiff completely

disabled and incapable of all forms of work. The fact that Plaintiff's personal physician who had

treated Plaintiff for numerous years gave an independent report recommending essentially the

same limitations asserted by the ALJ demonstrates that substantial evidence supports the ALJ's

conclusion of limiting Plaintiff to sedentary work. A June 23, 2011 examination by Dr. Fernando

corroborated Dr. Sidali's recommendation by determining Plaintiff's only limitations as weight

bearing, walking, or physical activity while standing. (R. at 654.)

On June 30, 2011, state agency physicians examined Plaintiff's impairments and found

the Plaintiff capable of activities beyond sedentary work. Dr. Jacknin limited Plaintiff to lifting

and carrying 20 pounds occasionally, 10 pounds frequently, standing, walking, and sitting about

6 hours a day, and unlimited pushing and pulling. (R at 662.) This determination categorized Plaintiff as more capable of physical activity than Dr. Sidali and Dr. Fernando, and thus less disabled. Because Dr. Jacknin's medical opinion is that Plaintiff is capable of physical work, these conflicting opinions taken as a whole indicate that Plaintiff is capable of at least sedentary work. The ALJ considered all medical evidence and doctor's opinions and rejected the less conservative limitations posed by Dr. Jacknin. (R. at 28.) This action demonstrates that the ALJ considered the medical evidence as a whole and found a limitation to sedentary work to be appropriate. (R. at 28.)

Because the ALJ's determination is in congruence with two doctor's objective medical opinion and more conservative than Dr. Jacknin's medical opinion, there is substantial evidence to support a finding that Plaintiff is not fully disabled, but capable of sedentary work.

C.  There is Substantial Evidence in the Record to Conclude that the ALJ Properly Determined Plaintiff Capable of Performing Her Past Relevant Work as a Packer.

Plaintiff contends that the ALJ did not fully develop the record with regard to Plaintiff's ability to perform her past relevant work. This Court is not convinced by this argument and finds that the ALJ properly satisfied his duty when determining Plaintiff capable of her past relevant work as a packer.

The ALJ thoroughly compared the demands of a packer with Plaintiff's RFC of sedentary work. (R. at 28.) In reaching a determination that Plaintiff was capable of such work, the ALJ relied on testimony given by Plaintiff which stated that her work as a packer included very light lifting of less than ten pounds and the ability to sit or stand at will. (R. at 28.) The ALJ reasonably concluded that these job requirements fall within Plaintiff's sedentary work capabilities.

Plaintiff's also contends that the ALJ's determination was in error because the ALJ did not call a vocational expert or related the specific mental limitations to the SSRs relied upon. These arguments are wholly without merit.

Plaintiff relies on *Fisher v. Asture* to assert this argument that the ALJ did not fully develop the record. No. 11-1634, 2012 WL 983691 (D.N.J. Mar. 21, 2012). Such reliance however, is misplaced for two reasons. First, the *Fisher* Court remanded the ALJ's decision at step five, the step which determines whether the plaintiff was capable of performing other work outside of past relevant work. The ALJ in *Fischer* had already determined the plaintiff incapable of her performing past relevant work. In the present case, the ALJ never reached step five of the evaluation because Plaintiff was found to be capable of her past relevant work as a packer. Therefore, Plaintiff cannot impute standards necessary during the fifth step of the process into the fourth step of the process and demand the Court to remand the ALJ's decision for this limited reason.

More importantly, the plaintiff in *Fisher* was determined to have **severe** mental impairments by the ALJ, thus requiring additional safeguards of a vocational expert or explanatory reliance on SSRs during step five. *Fischer*, 2012 WL 983691, at *2. This Court has already determined that the mental diagnoses put forth by the Plaintiff on appeal as disabling do not nullify the ALJ's decisions because those diagnoses were not presented as disabling prior to appeal and because those diagnoses were not substantiated in the record with evidence demonstrating severity. Therefore, the ALJ was not under the obligations asserted by Plaintiff during the inquiry of whether Plaintiff was capable of her past relevant work because Plaintiff did not have severe mental impairments.

There is substantial evidence to support the ALJ's determination that Plaintiff was capable of past relevant work because the ALJ relied on Plaintiff's own testimony regarding her past work and because the ALJ had no obligation to seek a vocation expert or specifically relate Plaintiff's mental impairments to an SSR.

## V.   CONCLUSION

For the foregoing reasons, the decisions of the Commissioner and the ALJ are **affirmed**. An appropriate order follows this Opinion.

DATED:  8/17/15

JOSE L. LINARES
U.S. DISTRICT JUDGE